UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 13-CR- |
| | : | |
| v. | : | Violation: |
| | : | 18 U.S.C. § 1341 (Mail Fraud) |
| **PAMELA J. BEARD,** | : | |
| | : | Criminal Forfeiture: |
| Defendant. | : | 18 U.S.C. § 981; |
| | : | 28 U.S.C. § 2461; and |
| | : | 21 U.S.C. § 853 |

## INFORMATION

The United States Attorney charges:

### COUNT ONE
### Mail Fraud

Unless otherwise indicated, at all relevant times:

#### Introduction

1. The Office of Orthopaedic Medicine & Surgery ("OMS") was a medical practice located in Washington, D.C., that specialized in the diagnosis and treatment of injuries and diseases of the human body's bones, muscles, joints, ligaments, and tendons. OMS held a corporate checking account and a corporate credit card account at Branch Banking and Trust Company ("BB&T"), a corporate credit card account at Bank of America, and a corporate credit card account at the American Express Company ("American Express").

2. From in or around March 1997 through in or around February 2013, defendant PAMELA J. BEARD ("BEARD" or "defendant") was employed as a billing clerk and the office manager at OMS. BEARD's duties included paying OMS's vendors and creditors, and also

included making payments on OMS's corporate credit card accounts. As the office manager and a billing clerk, BEARD had access to OMS's financial information and payment systems, and as a result could generate checks on OMS's corporate checking account at BB&T. BEARD was also authorized to use an OMS BB&T corporate credit card to pay for business-related expenses. BEARD was not authorized to use the OMS BB&T corporate credit card, or any of OMS's bank accounts, to pay for personal expenses.

3. BEARD resided in Bowie, Maryland. BEARD's husband, T.B., owned and operated a landscaping business. BEARD, T.B., and T.B.'s landscaping business held multiple checking accounts and credit card accounts at Bank of America. BEARD and T.B. also held multiple credit card accounts at American Express.

### The Scheme

4. From on or about May 1, 2006, through on or about June 26, 2013, BEARD devised and intended to devise a scheme to defraud OMS and to obtain money and property from OMS by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

5. The scheme was committed through the following manner and means, among others:

    a. From on or about May 1, 2006, through on or about January 22, 2013, BEARD generated approximately 114 OMS checks drawn on OMS's corporate checking account at BB&T. Each of these checks was made payable to Bank of America. The total amount of these checks written on the OMS BB&T corporate checking account was approximately $1,289,736.55. Once the checks were generated by BEARD through the OMS

2

payment system, BEARD provided these checks to an OMS physician, who signed them on behalf of OMS. Because these checks were made payable to Bank of America, the OMS physician believed that these checks were intended to pay OMS's corporate credit card account at Bank of America. Once these checks were signed by an authorized OMS signatory, BEARD deposited them at various Bank of America branch offices to make payments, without authorization, on Bank of America credit card accounts for BEARD, T.B., and T.B.'s landscaping business.

    b. From on or about October 6, 2006, through on or about June 26, 2013, in addition to the checks generated for the purpose of paying BEARD's Bank of America credit card accounts, BEARD generated and mailed additional checks drawn on OMS's corporate checking account at BB&T to American Express. BEARD also made on-line payments from the OMS BB&T corporate checking account to American Express. BEARD conducted these financial transactions, without authorization, in the total amount of approximately $2,207,882.02 to pay personal credit card accounts for BEARD and T.B. at American Express.

    i. For example, on or about January 2, 2009, BEARD generated and mailed to American Express check number 21935, drawn on OMS's corporate checking account at BB&T, made payable to American Express, in the amount of approximately $17,081.98. Approximately $9,558.90 of that check amount was used to pay two personal credit card accounts for BEARD and T.B. at American Express.

    c. From on or about April 21, 2006, through on or about December 30, 2012, BEARD used the OMS corporate credit card from BB&T, without authorization, to purchase goods and services for BEARD's personal use in the total amount of approximately $191,030.56.

6. In total, BEARD embezzled approximately $3,688,649.13 from OMS that BEARD was not entitled to receive. BEARD used the proceeds to pay for, among other things:

    a. business expenses associated with T.B.'s landscaping business;

    b. vacations, including a trip to the Bellagio Hotel in Las Vegas in or around May 2006 for approximately $1,947.67;

    c. a personal trainer;

    d. jewelry, including a purchase in the amount of approximately $8,723.80 on or about November 26, 2010, from David Yurman;

    e. a home mortgage;

    f. vehicles;

    g. a timeshare with Disney Vacation Development, Inc.;

    h. parties, including BEARD's fiftieth birthday party at the Sunset Room at National Harbor, in or around February 2012, for which BEARD spent approximately $18,703.75 on ice sculptures.

7. On or about January 2, 2009, in the District of Columbia, for the purpose of executing and attempting to execute the above-described scheme to defraud, defendant PAMELA J. BEARD knowingly caused to be delivered by mail, according to the direction thereon, check number 21935, drawn on the corporate checking account of the Office of Orthopaedic Medicine & Surgery at Branch Banking and Trust Company, made payable to American Express, in the amount of approximately $17,081.98.

**(Mail Fraud, in violation of Title 18, United States Code, Section 1341.)**

# FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The property subject to forfeiture includes:

| Description | VIN, Model #, or Serial # |
| --- | --- |
| Men's Pave Plate Ring with black diamonds .95kt | 350002012 |
| 7MM Color Classic Bracelet Amethyst | 110002937 |
| Mother of Pearl Large Gold Timepiece with Diamond Bezels and Diamond Markers | 500001101 |
| 14 kt white gold 7-inch tennis bracelet with 64 round brilliant cut diamonds and heart charm, totaling 4 ct TW (IJ/I2) | 1639267 |
| 14 kt white gold band with seven graduated round brilliant cut diamonds, totaling approx. 1 ct TW(HI/I1-I2) | 1659834 |
| 14 kt white gold stud earrings containing two princess cut diamonds totaling 1 ½ ct TW (IJ/I3) | 1713290 |
| 14 kt white gold stud earrings containing two round brilliant cut diamonds totaling approx. 1 ½ ct TW (IJ/I3) | 1713290 |
| 14 kt white gold semi-mount style engagement ring with 6 round shaped side diamonds, totaling approx. ½ ct TW (HI/I1-2) | 1649434 |
| 14 kt white gold anniversary band with 12 round brilliant cut channel set diamonds, totaling approximately 1 ct TW (IJ/I1-2) | 1595811 |
| Loose diamond purchased with the engagement ring and anniversary band | 1686672 |
| 14 kt white gold 7-inch tennis bracelet with 67 round brilliant cut diamonds and heart charm, totaling 3 ct TW (IJ/I2) | 1636705 |
| Carved Cable Enhancer in Sterling silver & 18K Yellow Gold by David Yurman | D06796S8 |
| Silver Short Row Single Row Ball Necklace by David Yurman | N09508SS16 |
| Silver 10x5 Sculpted Color Cable Bracelet with | B07903SSAAMM |

| Description | VIN, Model #, or Serial # |
|---|---|
| Amethyst by David Yurman | |
| 14MM Cushion Amethyst on Point Enhancer Diamond Weight .13 ct | D09673SSAAMDI |
| Silver D.42 Noblesse Drop Color Amethyst with Pave Earring by David Yurman | E08756SSAAMDI |
| 2010 Toyota Camry SE | 4T1BK3EK7AU102240 |
| 2005 Lexus RX330 | 2T2HA31U35C046840 |
| 2009 Harley Davidson - Red Hot Sunglow FLHX Street Glide | 1HD1KB4179Y631189 |
| 2006 Honda Motorcycle - 1GL1800P6 Goldwing | 1HFSC47H06A503720 |
| 2007 Honda VTX130 Motorcycle | 1HFSC55037A302124 |
| 2004 Silverado 2500 Extended Cab 4WD Truck | 1GCHK29284E307860 |
| Bobcat Walk Behind Mower | BOQ934007 |
| Lawnair IV | BOQ544909 |

The United States will also seek a forfeiture money judgment against the defendant in the amount of $3,688,649.13.

    2.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.    cannot be located upon the exercise of due diligence;

        b.    has been transferred or sold to, or deposited with, a third party;

        c.    has been placed beyond the jurisdiction of the Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p).)**

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

By: _____
David S. Johnson
Assistant United States Attorney
D.C. Bar No. 477298
United States Attorney's Office
for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7962